[No. 39732.    Department One.    December 31, 1969.]

BILL NOAH, *Respondent,* v. ROY D. MONTFORD *et al.,*
*Appellants.**

*Bonjorni, Burgeson & Fiori,* by *Duncan A. Bonjorni,* for
appellants.

*Curran, Kleweno & Curran,* by *Melvin L. Kleweno, Jr.,*
for respondent.

McGOVERN, J.—Defendants appeal from a judgment for
plaintiff in an action to recover a real estate commission.

January 24, 1966, plaintiff realtor received a written 45-
day exclusive listing agreement from defendants who
wanted to sell 120 acres of real property near Enumclaw.
Defendants were then purchasing the property on contract
and there was a $53,000 balance owing on the purchase.

February 24, 1966, defendants signed an earnest money
agreement to sell the front 60 acres of that property to Lyle
Schneider. Defendants also executed three other earnest
money agreements, each covering 20 acres of the remaining
property and each with a different purchaser. The sale of
the back 60 acres in three separate parcels was contingent
upon the closing of the Schneider sale, and the Schneider
agreement was conditioned upon Mr. Schneider's ability to

*Reported in 463 P.2d 129.

obtain adequate financing. Each purchaser was produced by plaintiff realtor within the period of time granted him under the exclusive listing agreement.

The Schneider earnest money agreement provided that:

Purchaser agrees to pay entire purchase price, by paying cash, including the earnest money, down to proceeds of a conventional type mortgage, which he agrees to secure immediately. This purchase contingent upon purchaser's ability to secure said mortgage.

Evidence at the trial indicated, however, that Mr. Schneider was not able to procure a conventional mortgage. Other evidence indicated that he then proposed a different financing arrangement which would satisfy the demands of all the parties, including defendants. Thereafter, May 27, 1966, defendants advised Mr. Schneider and plaintiff that the newly proposed financing plan was not satisfactory to them and not in accordance with the terms of either the listing agreement or earnest money agreement. June 8, 1966, Mr. Schneider and the other three purchasers made formal tender and demand for closing. June 20, 1966, defendants declined each tender and refused the demands. This lawsuit followed.

■ Defendants first argue that the Schneider earnest money agreement expired by its own terms because the purchaser failed to *immediately* secure financing as required by the agreement. They say that plaintiff did not earn a commission under the expired contract. The trial court, however, after considering the evidence, declined to adopt a strict interpretation of the earnest money financing clause and instead found the Mr. Schneider was only required to make immediate application for necessary financial assistance. Our examination of the record, and particularly the testimony of Mr. Schneider and plaintiff, discloses substantial competent testimony in support of that finding. We will not, therefore, substitute our judgment for that of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Ritzschke v. Department of Labor & Indus.,* 76 Wn.2d 29, 454 P.2d 850 (1969). The evidence was clear that Mr. Schneider made immediate and

exhaustive efforts to obtain conventional type financing but that his efforts were thwarted by an exceedingly tight money market.

It is then said that the Schneider earnest money agreement was terminated by the defendants on April 29, 1966, when they notified plaintiff by letter of that fact. The trial court found, however, that defendants continued to negotiate with Mr. Schneider after that date and, because of that fact, their claimed attempt to terminate the earnest money agreement was without legal effect. The court found that defendants' actions belied their declarations.

The evidence was undisputed that on May 12, 1966, defendants notified plaintiff by letter of the conditions which were to be fulfilled before the sale could be finally consummated. That letter made specific reference to the February 24, 1966 earnest money agreement and it established no time period within which the stated conditions had to be met. It was thus apparent that defendants did not consider the earnest money agreements terminated. The record supports the finding of the trial court.

Defendants then claim that the May 12, 1966 letter did not, and could not, revive the February 24, 1966 earnest money agreement because that agreement had been terminated and was not susceptible of revival. As authority for that proposition they refer us to *Pavey v. Collins*, 31 Wn.2d 864, 199 P.2d 571 (1948). We find *Pavey* not applicable. There the realtor failed to produce a purchaser within the time allotted to him under the exclusive listing agreement. We said that the agreement had expired by virtue of its own terms and could not be revived. That was not true here. These purchasers were produced by the plaintiff, and earnest money agreements with them were signed by the defendants within the period of time granted plaintiff under the exclusive listing agreement. Here it was not necessary to prove a revival of the earnest money agreements because the trial court found that the agreements had never terminated.

The record also supports the trial court's conclusion that Mr. Schneider's substituted method for financing the pur-

chase satisfied the requirements outlined by defendants in their May 12, 1966 letter. Under the new proposal, defendants would receive $14,500 in cash (the difference between what they owed for the property and what they were to receive for it), relief from any further obligation under their contract of purchase, fee title to the back 60 acres in order to convey sufficient legal title of it to the purchasers, and an extended period of time in which to retain possession of the property. A conventional type mortgage for Mr. Schneider could not have produced better results for the defendant sellers.

Defendants next argue that plaintiff is not entitled to a commission because he did not deal in good faith with his principals as is required of a fiduciary. We recently stated that a real estate broker with whom property is listed for sale is the agent of the seller and owes fiduciary responsibilities to him. In *Ramsey v. Sedlar,* 75 Wn.2d 901, 454 P.2d 416 (1969) and in *Mersky v. Multiple Listing Bureau of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968) we found that the brokers had violated those responsibilities. In *Mersky* the broker failed to tell the seller that a tie of kinship existed between a participating subagent and a prospective purchaser, and in *Ramsey* the broker did not advise the sellers that he, the broker, was one of the purchasers until after the sellers had executed the sales contract and after he had induced them to agree to a deed-release clause benefiting only the purchasers. Here the record indicates no instance of misrepresentation by the plaintiff or of his failure to disclose material facts to his principal. To the contrary, the trial court rightfully found that plaintiff produced purchasers who were ready, willing and able to purchase the property on terms satisfactory to the defendants. The principles enunciated in *Mersky* and *Ramsey* are not applicable.

Finally, defendants contend that two of the four earnest money agreements are not enforceable agreements because they fail to adequately describe the property being sold. Defendants rely on *Heim v. Faulstich,* 70 Wn.2d 688,

424 P.2d 1012 (1967) where we held that a realtor could not recover a real estate commission under a listing agreement in which the property was only described as "The O. H. Faulstich Farm, Route 1, Snohomish, Snohomish County, Washington." *Heim* is not applicable. Here plaintiff was expressly authorized by the parties to the earnest money agreements to insert the legal description of the properties over their signatures. *See Edwards v. Meader,* 34 Wn.2d 921, 210 P.2d 1019 (1949).

The judgment is affirmed.

HUNTER, C. J., FINLEY and WEAVER, JJ., and DONWORTH, J. Pro Tem., concur.

March 23, 1970. Petition for rehearing denied.